UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JESSICA SHERMAN, | ) | No. CV 08-1889-RC |
| | ) | |
| Plaintiff, | ) | |
| | ) | OPINION AND ORDER |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Jessica Sherman filed a complaint on December 26, 2008, seeking review of the Commissioner's decision denying her application for disability benefits. On May 22, 2009, the Commissioner answered the complaint, and the parties filed a joint stipulation on August 26, 2009.

### BACKGROUND

On October 28, 2005, plaintiff, who was born on September 14, 1986, applied for disability benefits under the Supplemental Security Income program ("SSI") of Title XVI of the Social Security Act ("Act"), claiming an inability to work since September 1, 1997, due to

bipolar disorder, depression and hypoglycemia. Certified Administrative Record ("A.R.") 86-88, 105. The plaintiff's application was initially denied on March 3, 2006, and was denied again on October 6, 2006, following reconsideration. A.R. 48-52, 54-61. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Jay E. Levine ("the ALJ") on January 17, 2008. A.R. 16-45, 64-66. On May 19, 2008, the ALJ issued a decision finding plaintiff is not disabled. A.R. 5-15. The plaintiff appealed this decision to the Appeals Council, which denied review on October 30, 2008. A.R. 1-4.

**DISCUSSION**

**I**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009); Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009). "In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the Commissioner." Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007),

1  cert. denied, 128 S. Ct. 1068 (2008); Vasquez, 572 F.3d at 591.

3      The claimant is "disabled" for the purpose of receiving benefits
4  under the Act if she is unable to engage in any substantial gainful
5  activity due to an impairment which has lasted, or is expected to
6  last, for a continuous period of at least twelve months.  42 U.S.C.
7  § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "The claimant bears the
8  burden of establishing a prima facie case of disability." Roberts v.
9  Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122
10 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

12     The Commissioner has promulgated regulations establishing a five-
13 step sequential evaluation process for the ALJ to follow in a
14 disability case.  20 C.F.R. § 416.920.  In the **First Step**, the ALJ
15 must determine whether the claimant is currently engaged in
16 substantial gainful activity.  20 C.F.R. § 416.920(b).  If not, in the
17 **Second Step**, the ALJ must determine whether the claimant has a severe
18 impairment or combination of impairments significantly limiting her
19 from performing basic work activities.  20 C.F.R. § 416.920(c).  If
20 so, in the **Third Step**, the ALJ must determine whether the claimant has
21 an impairment or combination of impairments that meets or equals the
22 requirements of the Listing of Impairments ("Listing"), 20 C.F.R.
23 § 404, Subpart P, App. 1.  20 C.F.R. § 416.920(d).  If not, in the
24 **Fourth Step**, the ALJ must determine whether the claimant has
25 sufficient residual functional capacity despite the impairment or
26 various limitations to perform her past work.  20 C.F.R. § 416.920(f).
27 If not, in **Step Five**, the burden shifts to the Commissioner to show
28 the claimant can perform other work that exists in significant numbers

in the national economy. 20 C.F.R. § 416.920(g). Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments.[1] Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914-15 (9th Cir. 1998) (per curiam).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since her application date. (Step One). The ALJ then found plaintiff has the severe impairment of a bipolar disorder (Step Two); however, she does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). The ALJ next determined plaintiff is unable to perform her past relevant work as a product demonstrator or restaurant hostess. (Step Four). Finally, the ALJ determined plaintiff can perform a significant number of jobs in the national

---

[1] First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. § 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 416.920a(c)(2-4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. § 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 C.F.R. § 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 416.920a(c)(3)]." 20 C.F.R. § 416.920a(d)(3), (e)(2).

4

1   economy; therefore, she is not disabled.  (Step Five).

**II**

A claimant's residual functional capacity ("RFC") is what she can still do despite her physical, mental, nonexertional, and other limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); see also Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009) (RFC is "a summary of what the claimant is capable of doing (for example, how much weight he can lift).").  Here, the ALJ found plaintiff has the RFC to perform a full range of work at all exertional levels except "she cannot work [at] unprotected heights [or] work on dangerous machinery" and she "cannot have continuous interaction with the public; nor perform conveyor, assembly line or piece work, all of which constitute production quota jobs."  A.R. 12.  However, plaintiff contends the ALJ's RFC assessment is not supported by substantial evidence because the ALJ erroneously rejected the opinions of treating psychiatrists, Mir Ali-Khan, M.D., and Michael Galanis, M.D., and failed to properly consider the side effects of plaintiff's medications.

**A.  Physicians' Opinions:**

The medical opinions of treating physicians are entitled to special weight because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).  Therefore, the ALJ must provide clear and convincing reasons for rejecting the uncontroverted opinion of a treating physician, Ryan

5

v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Reddick, 157 F.3d at 725, and "[e]ven if [a] treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." Reddick, 157 F.3d at 725; Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).

The plaintiff was hospitalized at Canyon Ridge Hospital as a danger to herself under California Welfare & Institutions Code § 5150 from February 4 to February 6, 2003. A.R. 162-63. When admitted, plaintiff was diagnosed as having a bipolar disorder and depression, and her Global Assessment of Functioning ("GAF") was determined to be 35.[2] A.R. 162. At the time of admission, plaintiff "stated that she was forced to take medication and, therefore, she got angry and wanted to kill herself. She also complained of having difficulty getting along with her mother who is known to be bipolar." Id. Dr. Khan noted that, during her brief hospital stay, plaintiff was stabilized with medication and supportive therapy; plaintiff's discharge diagnosis was recurrent major depression and her GAF upon discharge was determined to be 45.[3] A.R. 162-63. Upon discharge, Dr. Khan

---

[2] A GAF of 31-40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR"), 34 (4th ed. (Text Revision) 2000).

[3] A GAF of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent

found plaintiff was stable, cooperative and coherent, and had an appropriate affect and no thoughts of suicide or homicide. A.R. 163. Dr. Khan recommended plaintiff receive outpatient therapy. Id.

On February 24, 2003, Dr. Galanis examined plaintiff at the Riverside County Department of Mental Health ("DMH"), and diagnosed her as having a bipolar disorder and determined her GAF was 50 (highest past year 40). A.R. 186-88. Dr. Galanis noted plaintiff was experiencing social and emotional problems at home and school, but had no suicidal or homicidal ideation or intent. Id. Plaintiff continued to receive treatment at DMH and, on March 8, 2004, A.R. 176-85, Dr. Galanis found: plaintiff's thoughts were goal-directed and clear; her mood was euthymic; her medication was effective in reducing her agitation, impulsivity, outbursts of rage, depressed moods and irritability; she was not suicidal, homicidal or gravely disabled; she was starting to complete some school projects; and she had started a new part-time job. A.R. 184. On April 19, 2004, Dr. Galanis again examined plaintiff, and found her medication was effective in decreasing her rage, impulsivity and mood swings, her thoughts were goal-directed and clear, her affect was more pleasant and her behavior more cooperative, and she had increased efforts and attention to school work and experienced much less anger and irritability. A.R. 183. On August 14, 2004, Dr. Galanis stated plaintiff had been more irritable and argumentative in the preceding two weeks, and her sleep had not been as restful; however, plaintiff was not suicidal,

---

shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." DSM-IV-TR at 34.

```
 1  homicidal or gravely disabled, and she denied adverse reactions to
 2  medication.  A.R. 182.  On September 23, 2004, Dr. Galanis again noted
 3  plaintiff was not suicidal, homicidal, or gravely disabled, and he
 4  found plaintiff had no adverse reactions to her medication other than
 5  some mild dulling on Trileptal.  A.R. 181.  Finally, on January 25,
 6  2005, Dr. Galanis reported that plaintiff had stopped taking
 7  medication on a regular basis due to nausea and headaches, and she had
 8  less ups and downs since she has been off her medication.  A.R. 179.
 9  Dr. Galanis stated plaintiff is less anxious and picks at her skin
10  less, she feels calmer and less irritable, and her ability to
11  concentrate is improved with Desipramine.  Id.  Indeed, plaintiff
12  stated Luvox and Desipramine help her mood and attention span, and she
13  is better able to pay attention, organize, and clean her room, while
14  Dr. Galanis found plaintiff's mood was no longer anxious, depressed,
15  suicidal, or homicidal, her anxiety attacks had ceased, she was
16  working at a restaurant, and she was clear about her future.  Id.
17  Plaintiff also denied side effects from the Luvox or Desipramine.  Id.
18
19      The plaintiff contends the ALJ's RFC assessment is not supported
20  by substantial evidence because the ALJ did not properly consider the
21  opinions of Drs. Khan and Galanis.  Jt. Stip. at 3:4-4:18, 7:11-9:4,
22  9:13-19.  The Court disagrees.  The ALJ specifically discussed the
23  medical records from Canyon Ridge Hospital, where plaintiff was seen
24  by Dr. Khan, noting that when plaintiff was discharged, "[h]er
25  condition was stable and she was sent home with recommendations for
26  outpatient therapy along with five prescriptions."  A.R. 13.  The ALJ
27  also considered the DMH records, where plaintiff was seen by Dr.
28  Galanis, finding that "changes to [plaintiff's] medication regime were
```

made as needed for treatment of depression and bipolar disorder[,]" and plaintiff made "progressive improvement on medication when she [was] compliant." Id. Moreover, plaintiff does not cite any limitation posited by either Dr. Khan or Dr. Galanis that contradicts the RFC assessment. Rather, plaintiff complains that the ALJ erred because he did not specifically discuss the GAF scores Drs. Khan and Galanis posited. Not so. The ALJ's failure to mention a GAF score does not render the RFC assessment deficient. See Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."); Petree v. Astrue, 260 Fed. Appx. 33, 42 (10th Cir. 2007) (Unpublished Disposition) ("[A] low GAF score does not alone determine disability, but is instead a piece of evidence to be considered with the rest of the record."); Ramos v. Barnhart, 513 F. Supp. 2d 249, 261 (E.D. Pa. 2003) ("Clinicians use a GAF scale to identify an individuals' [sic] overall level of functioning, and a lower score 'may indicate problems that do not necessarily relate to the ability to hold a job.'" (citation omitted)); 65 Fed. Reg. 50746, 50764-65 ("The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listings."). Further, the GAF scores were determined more than two years before plaintiff applied for SSI benefits, see Torres v. Chater, 125 F.3d 166, 171 n.1 (3d Cir. 1997) ("SSI benefits are not payable for a period prior to a claimant's application." (citing 20 C.F.R. § 416.335)), and, as the ALJ found, plaintiff's condition clearly improved with treatment. A.R. 13; see also A.R. 166-67, 179-85.

1  Finally, the RFC assessment is supported by substantial evidence in
2  the record, including the opinions of examining psychiatrist Kent
3  Jordan, M.D. (A.R. 189-94), and examining psychologist, Robin Rhodes
4  Campbell, Ph.D. (A.R. 214-19).  Orn v. Astrue, 495 F.3d 625, 632 (9th
5  Cir. 2007); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

**B.  Side Effects**:

In determining a claimant's limitations, the ALJ must consider all factors that might have a significant impact on an individual's ability to work, including the side effects of medication.  Erickson v. Shalala, 9 F.3d 813, 817-18 (9th Cir. 1993); Varney v. Sec'y of Health & Human Servs., 846 F.2d 581, 585 (9th Cir. 1988).  Thus, when a claimant states she experiences a side effect known to be associated with a particular medication, the ALJ may disregard that evidence only if he "support[s] that decision with specific findings similar to those required for excess pain testimony, as long as the side effects are in fact associated with the claimant's medication(s)."  Varney, 846 F.2d at 585.

The plaintiff contends the ALJ did not properly consider the side effects from her medication, specifically "mild dulling" from Trileptal and nausea and headaches.  A.R. 179, 181.  However, plaintiff discontinued the medications causing those side effects before she applied for disability benefits.  A.R. 167.  Instead, during the relevant time period, plaintiff was prescribed Cymbalta, A.R. 22, 167, 191, which she did "pretty well" on (but had to stop taking because she did not have insurance).  A.R. 23-25.  Therefore,
//

10

1  the ALJ did not err in addressing the plaintiff's side effects from
2  medication.  <u>Greger v. Barnhart</u>, 464 F.3d 968, 973 (9th Cir. 2006).

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE:  February 8, 2010           /S/ ROSALYN M. CHAPMAN
                                  ROSALYN M. CHAPMAN
                                  UNITED STATES MAGISTRATE JUDGE

R&R-MDO\08-1889.mdo
2/8/10